TEX TAN WELHAUSEN COMPANY and Tex Tan Western Leather Company, Division of Tandy Corporation, Petitioner, Cross-Respondent,

v.

NATIONAL LABOR RELATIONS BOARD, Respondent, Cross-Petitioner.

No. 26338.

United States Court of Appeals, Fifth Circuit.

Nov. 5, 1970.

Rehearing Denied and Rehearing En Banc Denied Feb. 1, 1971.

Theo F. Weiss, Clemens, Knight, Weiss & Spencer, San Antonio, Tex., for petitioner, cross-respondent.

Arnold Ordman, Gen. Counsel, Dominick L. Manoli, Associate Gen. Counsel, Marcel Mallet-Prevost, Asst. Gen. Counsel, Norton J. Come, Asst. Gen. Counsel, Joseph A. Yablonski, Linda Sher, Attys., N. L. R. B., William Wachter, Washington, D. C., Clifford Potter, Director, Region 23, N.L.R.B., Houston, Tex., for respondent, cross-petitioner.

L.N.D. Wells, Mullinax, Wells, Mauzy & Collins, Dallas, Tex., for intervenor Amalgamated Meat Cutters & Butcher Workmen of N.A., AFL–CIO.

ON REMAND FROM THE SUPREME COURT

Before GEWIN, MORGAN and ADAMS,* Circuit Judges.

ADAMS, Circuit Judge:

On November 21, 1969, several months before the Supreme Court decided H. K. Porter Co. v. N.L.R.B., 397 U.S. 99, 90 S.Ct. 821, 25 L.Ed.2d 146 (1970), this Court filed an opinion by which it enforced a National Labor Relations Board order against Tex Tan Welhausen Company and Tex Tan Western Leather Company. The order required the Companies to cease and desist from certain unfair labor practices and to remedy the effect of such practices by taking prescribed affirmative action. The Supreme Court granted the Companies' petition for certiorari, and thereafter vacated the judgment of this Court and remanded the case for further consideration in light of its decision in *Porter*.[1] Accordingly, we must decide to what extent, if any, *Porter* requires a modification of the previous order.

---

* Of the Third Circuit, sitting by designation.

1. 397 U.S. 819, 90 S.Ct. 1516, 25 L.Ed.2d 805 (1970).

Since the facts of this case are fully set forth in the prior opinion at 419 F. 2d 1265, we need not repeat them in *extenso* here. For the purpose of this opinion it is sufficient to relate only those portions of the Board's extensive order which may fall within the ambit of *Porter*. The Board's order required *inter alia* that the Companies cease and desist from refusing to incorporate provisions relating to a piecework-standard grievance procedure into the collective bargaining contract, from refusing to incorporate into the contract a definition of productivity speed ratings, from insisting that the Companies be given the right to set piecework rates unilaterally, and from refusing to incorporate into the contract an existing agreement relating to productivity speed ratings.

In *Porter*, the Supreme Court squarely held " * * * that while the Board does have the power under the National Labor Relations Act, 61 Stat. 136, as amended, to require employers and employees to negotiate, it is without power to compel a company or a union to agree to any substantive contractual provision of a collective bargaining agreement." 397 U.S. at 102, 90 S.Ct. at 823. We can discern no significant fact related to the issues raised here that distinguishes the case before us from *Porter*. In *Porter* the Court of Appeals for the District of Columbia found that the Porter Company had bargained in bad faith regarding a union request for a check-off of union dues, and approved a Board order imposing on the employer an obligation to collect union dues from its employees. The Supreme Court declined to review the Board's finding of bad faith bargaining, because regardless of whether the employer had bargained in bad faith, the Board's order requiring the Company to agree to check off union dues was beyond the power of the Board and therefore unenforceable. The Supreme Court said, " * * * it was recognized from the beginning that agreement might in some cases be impossible, and it was never intended that the Government would in such cases step in, become a party to the negotiations and impose its own views of a desirable settlement."

397 U.S. at 108, 90 S.Ct. at 823. In the case before this Court the Board has attempted, just as it did in *Porter*, to remedy the Companies' bad faith approach to the negotiations by compelling the inclusion of contractual provisions the Board believes to be just.

■ Consequently, we hereby modify the previous decision of the Court and deny enforcement of the Board's order insofar as the prior decision enforces those portions of the Board's order which would require the Companies to cease and desist from "(a) insisting, as a condition to entering into an agreement * * * ", upon a provision depriving the employees of their right to file grievances on the establishment of standards for piecework, (b) insisting, as a condition to entering into an agreement * * *, upon excluding from such agreement any definition or guiding principle as to productivity speed ratings * * *," and "(d) insisting * * * upon being given the right to fix the rates of pay of its piecework employees unilaterally."

■■ However, we do not otherwise alter the prior decision to enforce the Board's order. The Board's order that the Companies cease and desist from "refusing to incorporate into a written contract with the Union its agreement as to productivity speed ratings upon the basis of which production standards for piecework are to be established" does not run afoul of *Porter,* because *Porter* rules only the situation where the Board *imposes* contract provisions upon the parties. By ordering the Companies to incorporate into a written contract provisions to which the parties previously agreed, the Board followed well-settled law. H. J. Heinz Company v. NLRB, (1941), 311 U.S. 514, 61 S.Ct. 320, 85 L.Ed. 309; Amalgamated Clothing Workers of America, A.F.L.–C.I.O. v. NLRB, 324 F.2d 228 (2nd Cir. 1963); see, N.L.R.B. v. Strong, 393 U.S. 357, 359–360, 89 S.Ct. 541, 21 L.Ed.2d 546 (1969). Nor, do we modify the prior decision to enforce those portions of the Board's order requiring the Companies to negotiate in the future in good faith.

There is no intimation whatsoever in *Porter* that indicates it is beyond the Board's power to order serious and good faith negotiations between an employer and the employees' representative. To the contrary the *Porter* decision explicitly acknowledges that the Board does have such power. 397 U.S. at 102, 90 S.Ct. 821.

██ The Companies strenuously contend that once those portions of the Board's order imposing specific contract provisions upon the parties are denied enforcement, this Court must also deny enforcement to the other portions of the Board's order. We do not agree that this should be so. In the prior opinion, the Court found that "[t]he record as a whole contains substantial evidence to support the findings of the Trial Examiner as affirmed by the Board", 419 F. 2d at 1269, and *Porter* does not raise any question requiring us to reopen the issue whether the Board's findings are justified by substantial evidence. All the remedies ordered by the Board flow from its finding that the Companies were guilty of committing unfair labor practices, and thus we see no reason to disturb our prior decision, except insofar as it enforced those portions of the Board's order imposing contract provisions upon the unwilling Companies.

Accordingly, we modify our decision so as to deny enforcement only to the sections of the Board's order requiring the Companies to cease and desist from:

"(a) Insisting, as a condition to entering into an agreement with Amalgamated Meatcutters and Butcher Workmen of North America, AFL–CIO, or any other exclusive bargaining representative of its employees depriving employees of their right to file grievances on the establishment of standards for piecework. (b) Insisting, as a condition to entering into an agreement with the Union or any other exclusive bargaining representative of its employees in the appropriate unit, upon excluding from such agreement any definition or guided principle as to productivity speed ratings on the basis of which production standards for piecework are to be estab-

lished," and "(d) In any other manner insisting, as a condition to entering into an agreement with the Union or any other exclusive bargaining representation of its employees, upon being given the right to fix the rates of pay of its piecework employees unilaterally."

Nevertheless, in accordance with the Board's order as now amended each of these provisions shall become subject to good faith bargaining, the outcome of which will be within the control of the parties.

## ON PETITION FOR REHEARING AND PETITION FOR REHEARING EN BANC

PER CURIAM:

The Petition for Rehearing is denied and no member of this panel nor Judge in regular active service on the Court having requested that the Court be polled on rehearing en banc, (Rule 35 Federal Rules of Appellate Procedure; Local Fifth Circuit Rule 12) the Petition for Rehearing En Banc is denied.