NATIONAL LABOR RELATIONS BOARD, Petitioner,

v.

HANDY HARDWARE WHOLESALE, INC., Respondent.

No. 76–1793
Summary Calendar.*

United States Court of Appeals,
Fifth Circuit.

Nov. 18, 1976.
Rehearing Denied Jan. 10, 1977.

* Rule 18, 5 Cir.; see *Isbell Enterprises, Inc. v. Citizens Casualty Co. of New York et al.,* 5 Cir. 1970, 431 F.2d 409, Part I.

Elliott Moore, Deputy Assoc. Gen. Counsel, Aileen Armstrong, Supervisor, Frederick Havard, Atty., John S. Irving, Jr., Gen. Counsel, John E. Higgins, Jr., Deputy Gen. Counsel, Carl L. Taylor, Assoc. Gen. Counsel, N.L.R.B., Washington, D. C., for petitioner.

Michael J. Kuper, Houston, Tex., for respondent.

Louis V. Baldovin, Jr., Director, Region 23, N.L.R.B., Houston, Tex., for other interested parties.

Before DYER, CLARK and HILL, Circuit Judges.

CLARK, Circuit Judge:

The National Labor Relations Board (Board) seeks enforcement of its order that Handy Hardware Wholesale, Inc. (Handy Hardware) bargain collectively with the Teamsters, General Drivers, Warehousemen and Helpers Local Union No. 968 (the Union). After an election, the Board certified the Union as the official representative of a unit of employees at Handy Hardware. Handy refused to bargain by alleging three improprieties attributable to the Union during the representation election campaign. The Board rejected all three allegations in a summary judgment. Handy Hardware contends before this court that the Board's refusal to accord it a hearing on its allegations and the Board's grant of leave to its General Counsel to amend the complaint deprived it of due process. Rejecting the contentions of Handy Hardware, we enforce the Board's order to bargain.

Handy Hardware is a Texas corporation engaged in the wholesale distribution of commercial hardware. The events underlying this cause occurred at its principal offices in Houston. On May 10, 1974, the Union filed a petition with the Board seeking to represent at Handy Hardware

[a]ll truckdrivers, production and maintenance employees, including stockmen, order fillers, warehouse helpers and porters but excluding office clerical employees, sales and commission employees, watchmen, guards, and supervisors as defined in the [National Labor Relations] Act. [61 Stat. 136, 73 Stat. 519, 29 U.S.C. §§ 151 *et seq.*].

The Board-conducted election on July 3, 1974, resulted in 19 votes for the Union, one opposed, and 13 ballots challenged. Since

the contested ballots could not change the outcome of the election, no resolution as to them was attempted. On July 9, 1974, objections to the election were filed by Handy Hardware, complaining of 1) the alteration of a sample ballot included on an official Board notice of the election to show a vote for the Union; 2) threats to an employee in an attempt to acquire her signature on a Union authorization card; and 3) participation by a Handy Hardware supervisor in the propaganda campaign in behalf of the Union. The Board's regional director refused the requested hearing but did conduct his own investigations into the complaints. His report recommended that the objections be overruled and the election certified. Handy Hardware's exceptions to the regional director's report alleged misstatements and omissions. The Board adopted the findings of the regional director and certified the election.

Handy Hardware refused to bargain with the Union. The regional director issued a complaint on December 27, 1974, alleging this refusal as an unfair labor practice. Handy Hardware denied that a continuing request by the Union to bargain existed. It also attacked the suitability of the bargaining unit. On February 14, 1975, the Board issued an order to show cause why summary judgment against Handy Hardware should not be granted. After various responses by all sides, the Board granted the motion for summary judgment and found Handy Hardware guilty of unfair labor practices under 29 U.S.C. § 158(a)(1) and (5) in refusing to bargain.

We have examined the actions of the Board in light of the following legal principles. No post-election evidentiary hearing in a representation proceeding is required by statute. However, the Board has provided by regulation for a hearing when "substantial and material factual issues" are present. 29 C.F.R. § 102.69(f). Such a procedure comports with all requirements of due process. N.L.R.B. v. White Knight Mfg. Co., 474 F.2d 1064 (5th Cir. 1973). Under this regulation, a party objecting to an election must present a prima facie case consisting of "specific evidence of specific events from or about specific people" which, if true, would necessitate the invalidation of the election. N.L.R.B. v. Carlton McLendon Furniture Co., Inc., 488 F.2d 58, 61 (5th Cir. 1974); United Steelworkers of America, AFL–CIO v. N.L.R.B., 496 F.2d 1342, 1348 (5th Cir. 1974). Because of the large degree of discretion accorded to the Board, considerable weight must be assigned to its determinations. Judicial review must be limited to the reasonableness of such determinations. N.L.R.B. v. Golden Age Bev. Co., 415 F.2d 26, 29 (5th Cir. 1969). It does not matter that the reviewing court might have reached different conclusions if the Board has resolved the case reasonably. White Knight Mfg. Co., supra.

In its order certifying the Union as a bargaining agent, the Board adopted the findings and conclusions of the regional director's report. In discussing Handy Hardware's complaint about the altered sample ballot portion of the Board poster announcing the election, the regional director found that on June 28, 1974, five days prior to the election, a superintendent at Handy Hardware saw a small crowd gathered around one of the election notices. When the superintendent was noticed by the crowd, it started to disperse. One of the employees stated he had been "caught." It was noticed that an "X" was placed in both the "yes" and "no" squares on the sample ballot and that the name "Jorge" was written on the ballot, the same first name as that of the employee who stated he had been "caught." The sample ballot was replaced. Approximately three days after the election, another election notice was found, still posted, which has an "X" marked in the "yes" block signifying a vote for the Union. No evidence was presented as to the amount of time the sample ballot had remained posted in this defaced form.

In discounting the presence of the ballot found three days after the election, the regional director observed that no evidence was offered to show the alteration occurred prior to the election and found the almost

instantaneous removal of the previous defaced sample ballot prevented any possible improper influence on the election. The potential impropriety of an altered official election notice is the chance that an employee will believe the Board, who is responsible for the posting of the notices, has signified its favoritism for one side in the election. It is too obvious to warrant further comment that the Board could reasonably deny credence to this argument in the instant situation. *N.L.R.B. v. John S. Barnes,* 478 F.2d 1105, 1107 (7th Cir. 1973).

■ The second objection concerned an alleged threat to a female employee to get her signature on a union authorization card, which the regional director recommended be overruled for lack of evidence. The only indication of the basis of this objection is a statement in a letter from Handy Hardware to the regional examiner. The letter maintained that, if a hearing were held, an employee named Angelina Hopkins would state that an employee was sent to her by another employee to demand "for the last time" that she sign a union authorization card but that she refused to sign. The burden is on the party seeking to overturn the election to show by specific evidence not only that unlawful acts occurred but also that such acts sufficiently inhibited the free choice of employees as to affect materially the results of the election. *Fones v. N.L. R.B.,* 431 F.2d 417, 420 (5th Cir. 1970). Handy Hardware's letter allegation without supporting evidence does not prove the occurrence of the event, much less demonstrate an adverse effect on the election. Assuming one such event occurred, a demand "for the last time" that an authorization card be signed is at best only ambiguously a threat. We find the Board's acceptance of this conclusion by the regional director to be reasonable.

■ The final question resolved by the regional director concerns the possibility that an employee named Dennis Baker, who without question worked strenuously in behalf of the Union, was a company supervisor. It has frequently been held that the participation of a supervisor in a union election undermines the "laboratory conditions" necessary for an unfettered choice. *N.L. R.B. v. Decatur Transfer & Storage Co.,* 430 F.2d 763, 764 (5th Cir. 1970); *Home Town Foods, Inc. v. N.L.R.B.,* 416 F.2d 392, 396 (5th Cir. 1969); *Turner's Express, Inc. v. N.L.R.B.,* 456 F.2d 289, 290 (4th Cir. 1972). As explained in various Board opinions, the threat posed by the participation of a supervisor is twofold. First, if a supervisor takes a stance in favor of the Union, even though the employer does not otherwise indicate its position, his association with the management hierarchy, in an employee's perception, could indicate employer support for the Union. Second, if a supervisor influences hiring and firing or in other respects holds substantial power over an employee, the supervisor's participation in the election could have a coercive effect on other employees. *Stevenson Equip. Co.,* 174 N.L. R.B. No. 865; *Turners Express, Inc.,* 189 N.L.R.B. No. 106. This is true even if the employer, as here, openly urged the defeat of the Union, since the supervisor might well be able to recommend if not actually cause the dismissal or other adverse treatment of the employee, disguising the true motives of the recommendation in innumerable ways. The likelihood of such occurrences is less important than the possibility that an employee might fear such retribution and act accordingly.

■ The issue of whether an employee is actually a supervisor is a recurring and difficult one. *N.L.R.B. v. Security Guard Serv., Inc.,* 384 F.2d 143, 145 (5th Cir. 1967). The standards for determining this question are established by the definition of "supervisor" contained in 29 U.S.C. § 152(11).[1]

---

1. . . . . .

(11) The term "supervisor" means any individual having authority, in the interest of the employer, to hire, transfer, suspend, lay off, recall, promote, discharge, assign, reward, or discipline other employees, or responsibly to direct them, or to adjust their grievances, or effectively to recommend such action, if in connection with the foregoing the exercise of such authority is not of a merely routine or clerical nature, but requires the use of independent judgment.

. . . . .

The Board's determination on this issue is entitled to great weight, as the expertise of the Board is uniquely capable of measuring the subtle gradations of authority which delineate the supervisor from non-supervisory personnel. *Trailmobile Div., Pullman, Inc. v. N.L.R.B.,* 379 F.2d 419, 422 (5th Cir. 1967). However, we find it unnecessary to weigh the evidence to see if the Board has reached a reasonable conclusion in this thorny area because we find beyond peradventure that a secondary conclusion reached by the Board is sound.

 The evidence disclosed that when Baker began working for the Union after the petition for a Union election was filed, Baker went to his immediate superior and asked to be relieved of such supervisory duties as he had pending the election. His superior, Superintendent Smith, demanded that he remain in his old duties as no immediate replacement was available. Baker refused and reverted to his former work. This resulted in Baker's discharge six days later. Contemporaneous with his dismissal, the company announced that Baker was being discharged since he was a "supervisor" and had been engaging in Union activities. Had Baker worked for the Union while occupying a supervisory role, Handy Hardware could properly have dismissed him for this activity. *Florida Power & Light Co. v. Internat. Bro. of Elec. Workers, Local 641,* 471 U.S. 790, 94 S.Ct. 2737, 41 L.Ed.2d 477 (1974). However, our pretermission of a decision as to his supervisory status likewise pretermits adjudication of the correctness of his discharge. It was reasonable for the Board to determine that since Baker was not employed by Handy Hardware during the last six weeks of the election period, impermissible coercion resulting from his favoritism for the Union was inconceivable.

To demonstrate the potential for such coercion, Handy Hardware offered an affidavit of an employee which stated that a few nights before the election the affiant attended a meeting of Union sympathizers. It was asserted by someone at the meeting that Baker did not have to be concerned about his job since he would be able to regain it imminently. The basis for this statement apparently was the fact that Baker had filed an unfair labor practice complaint with the Board concerning his firing. Following the election, his complaint was settled and he was rehired by Handy Hardware. Handy Hardware's argument is indeed attenuated. First it assumes that Baker was a supervisor; next that employees knew, although then discharged, he probably would be reemployed, and reemployed in a supervisory capacity. One would then have to conclude that this likelihood of reemployment acted coercively on employees who feared that, once rehired, Baker would take retribution against them if they had not supported the Union.

The question of whether this conduct or, more aptly, probability of future conduct, tended to interfere with employees' free choice is primarily committed to the discretion of the Board. *N.L.R.B. v. Sumter Plywood Corp.,* 535 F.2d 917 (5th Cir. 1976). We find that discretion was reasonably exercised in this case.

 The final contention raised by Handy Hardware alleged that during the unfair labor practice proceeding initiated on December 27, 1974, the General Counsel of the Board was improperly allowed in effect to amend his complaint without complying with statutory requirements, 29 U.S.C. § 160(b). The challenged action related to one paragraph of the complaint which alleged that the Union had continued from November 15, 1974, "to date" to request that Handy Hardware bargain. In its answer, Handy Hardware alleged that it did not have knowledge sufficient to reply to this statement. The General Counsel then filed a motion to transfer and continue the case before the Board and for summary judgment. In this motion, no mention was made of the statement by Handy Hardware that it had no knowledge of the Union's continuing attempts to bargain. Subsequently the motion for summary judgment was amended, admitting that the allegation

concerning lack of knowledge as to requests by the Union to bargain was overlooked. Three documents were appended allegedly demonstrating these requests, one of which post-dated the December 27 complaint. Handy Hardware refers us to several precedents which have denied enforcement of Board orders which were based on findings of acts constituting unfair labor practices, when such acts were not alleged in the complaint.

Two operative rules need to be considered in reaching our decision. The Board's own regulation provides, 29 C.F.R. § 102.15:

> . . . The complaint shall contain (a) a clear and concise statement of the facts upon which assertion of jurisdiction by the Board is predicated, and (b) a clear and concise description of the acts which are claimed to constitute unfair labor practices, including, where known, the approximate dates and places of such acts and the names of respondent's agents or other representatives by whom committed.

The Administrative Procedure Act, 5 U.S.C. § 554(b) states:

> Persons entitled to notice of an agency hearing shall be timely informed of—
>
> . . . . .
>
> (3) the matters of fact and law asserted.

However, these standards are not to be applied with the particularity of formal court pleadings. *Bob's Casing Crews, Inc. v. N.L.R.B.,* 458 F.2d 1301 (5th Cir. 1972). It is the function of these pleadings to put the employer on notice as to the basis of the charges against him. *Engineers & Fabricators, Inc. v. N.L.R.B.,* 376 F.2d 482 (5th Cir. 1963); *N.L.R.B. v. Scenic Sportswear,* 475 F.2d 1226 (6th Cir. 1973).

The objection raised by Handy Hardware is that though the complaint alleged refusal to bargain "to date," *i. e.,* the date of the complaint, the Board considered evidence of a later refusal without amending the complaint. The case upon which Handy Hardware principally relies did not deal with an enlargement of the time period in which violations occurred, but instead dealt with a complaint which specifically alleged two violations, did not contain a "catch-all" clause which would apprise the employer that other acts might be alleged as violations, and resulted in a conclusion by the court that the employer had been denied due process when other acts were proven and relied upon in the Board's decision. *Boyle's Famous Corned Beef Co. v. N.L.R.B.,* 400 F.2d 154 (8th Cir. 1967).

The additional instance of failure to bargain proven here did not constitute a separate unfair labor practice but was instead a continuation of the same illegality alleged in the complaint. There was no specific reliance by the Board upon the complained-of evidence of refusal to bargain. Moreover, just as courts have allowed consideration of events prior to the six-month statute of limitations governing the filing of charges of unfair labor practices in order to "cast light on those events within the . . . six-month period," *N.L.R.B. v. Holmes Tuttle Broadway Ford, Inc.,* 465 F.2d 717, 718 (9th Cir. 1972); *Local Lodge No. 1424 v. N.L.R.B.,* 362 U.S. 411, 80 S.Ct. 822, 41 L.Ed.2d 832 (1960), so the same principle is applicable to such closely related events post-dating the complaint. *Stewart Die Casting Corp. v. N.L.R.B.,* 114 F.2d 849, 857 (7th Cir. 1940), *cert. denied,* 312 U.S. 680, 61 S.Ct. 449, 85 L.Ed. 1119 (1941), *petition for order modifying denied,* 129 F.2d 481 (1942).

As the alleged violation in the present case was a failure to bargain, the continuing failure past the date of the complaint was relevant and obviously an outgrowth of the earlier allegation. Handy Hardware was sufficiently notified by the complaint of the grounds of the charges against it and was not prejudiced by the amended motion of the Counsel to the General Counsel.

The order of the Board that Handy Hardware must bargain with the Union is therefore

ENFORCED.